## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FILLIPPO MARINESI,** § | |
| **PLAINTIFF** § | |
| § | |
| § | Civil Action No.: |
| v. § | |
| § | |
| **UNITED AIRLINES INC** § | |
|     Defendants. § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Fillippo Marinesi ("*Marinesi or Plaintiff*"), by and through her attorney of record, who files this original complaint against United Airlines ("*United or Defendant*"), and for causes of action would show unto this Honorable Court as follows:

### I. PARTIES

2. Fillippo Marinesi is an individual whose address is 10 Hill St. Apt. 12L, Newark, New Jersey.

3. Defendant, United Airlines, is a publicly traded entity, located at 233 S. Wacker Drive, Chicago, Illinois 60606.

### II. JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1331, as this action arises under federal law, including the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and under 28 U.S.C. § 1337 because the action involves a statute regulating commerce. Jurisdiction is also proper under 28 U.S.C. § 1343, as Plaintiff alleges deprivation of civil rights under color of law.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the events giving rise to the claims occurred, in part, within the District of New Jersey, and because the Plaintiff resides in this District and Defendant conducts substantial business here.

### III.     FACTUAL BACKGROUND

5. Marinesi has been employed as a flight attendant with United Airlines since April 2, 2014.

6. Throughout his tenure, Marinesi received formal recognition for his professionalism and performance, including the "One Hundred" Award in 2015. He was also commended for his response during an in-flight medical emergency on Flight 1162.

7. Marinesi's employment proceeded without incident until on or about August 12, 2023.

8. On or about that date, while assigned to a United Airlines flight to Dubai, Marinesi sustained a spinal injury during the course of his duties.

9. Based on his physician's recommendation, and with notice to and approval from both his supervisor and case manager, Marinesi applied for and was granted medical leave.

10. During his recovery, Marinesi encountered financial difficulties and was unable to continue affording his residence in New Jersey.

11. Due to financial constraints, Marinesi relocated to Kissimmee, Florida, to temporarily reside near his family.

12. Prior to his departure from New Jersey, Marinesi informed United Airlines of his change in location and updated his residency accordingly.

13. He also requested that his physical therapy be transferred to a provider in Florida to continue his treatment during recovery.

14. Due to limited space in his cousin's home, Marinesi cousin arranged a hotel room for his stay.

15. The hotel was located in the same building as a new restaurant owned by the cousin, which was not yet open to the public.

16. In early April 2024, United Airlines initiated an investigation into Marinesi, alleging that he had engaged in unauthorized employment at the restaurant during his medical leave.

17. The allegations were based on photographs obtained through surveillance, content from Marinesi's personal social media, and conclusions drawn by the company's investigator.

18. On May 7, 2024, Marinesi was required to attend an investigatory meeting regarding the allegations.

19. The allegations presented during the meeting were based on assumptions and misinterpretations of the surveillance and social media content. Marinesi denied having engaged in any compensated employment or activity inconsistent with the restrictions of his medical leave.

20. The surveillance photographs showed Marinesi entering and exiting the hotel building and occasionally appearing near or inside the restaurant space.

21. He was dressed in casual clothing and not in any kind of professional or kitchen uniform.

22. Certain images showed Marinesi and a family member handling food in the restaurant's kitchen. These actions took place during a private family gathering.

23. The kitchen was used to warm pre-prepared food, utilizing conventional ovens. At the time, the restaurant lacked essential utility connections, including gas service, and was not operational or open for business.

24. Marinesi had no involvement in the operation, management, or staffing of the restaurant.

25. Additionally, there were no commercial activities occurring while Marinesi was there and Marinesi was not working in any capacity.

26. The investigation spanned several days and included surveillance from multiple locations. Marinesi was observed participating in typical personal and family activities, such as sightseeing and errands, with no indication of structured or ongoing work responsibilities.

27. The social media content referenced in the investigation was taken from Marinesi's private accounts. These posts were created voluntarily and predated or were unrelated to the period of medical leave. No company policies were violated.

28. No employment-related records, such as payroll documentation, contracts, or tax forms, have been produced to support the claim that Marinesi was working at or compensated by the restaurant.

29. Based on the conclusions of the investigation, United Airlines terminated Marinesi's employment. The decision was made despite the absence of objective evidence of any policy violation.

30. As a result of the investigation and termination, Marinesi has experienced emotional distress, reputational harm, and financial hardship.

## IV.  CAUSES OF ACTION

### COUNT 1: WRONGFUL TERMINATION IN VIOLATION OF TITLE VII

31. Marinesi incorporates by reference the preceding paragraphs as though fully set forth herein.

32. United Airlines Wrongfully terminated Marinesi's employment on or about May 17, 2024.

33. The wrongful termination follows an internal investigation lacking a factual basis and instead relying on speculative inferences, cultural bias, misinterpreted surveillance, and selectively framed personal social media content.

34. The basis used to wrongfully terminate Marinesi did not provide or support credible or substantiated evidence of misconduct.

35. There was no objective evidence that Marinesi engaged in any compensated work, violated his medical restrictions, or otherwise breached United Airlines' policies during his approved medical leave.

36. Terminating Marinesi based on unverified and speculative accusations, especially without payroll records, tax documents, or credible witness testimony, violated the fundamental principle of fair and just cause in employment decisions.

37. United Airlines' actions constituted wrongful termination in violation of public policy, including policies that protect employees from retaliation, require fair investigatory procedures, and support the lawful use of medical leave.

### COUNT 2: RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

38. Marinesi incorporates by reference the preceding paragraphs as though fully set forth herein.

36. Marinesi lawfully exercised his right to medical leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., following a work-related spinal injury.

37. Shortly after taking protected leave, Marinesi was subjected to an aggressive and disproportionate investigation initiated by United Airlines.

38. This retaliatory investigation, lacking objective evidence and conducted in close temporal proximity to Marinesi's exercise of FMLA rights, reflects a clear causal connection

between his protected leave and the adverse employment action of termination taken against him.

39. United Airlines' actions constitute unlawful interference and retaliation in violation of 29 U.S.C. § 2615(a)(1) and § 2615(a)(2) which prohibit employers from restraining, denying, or retaliating against any employee for exercising or attempting to exercise any FMLA right.

40. The pretextual nature of the allegations, absence payroll documentation, tax forms and employment records .

41. Additionally, reliance cultural misunderstandings and personal family activities demonstrate discriminatory animus and a retaliatory motive inconsistent with the mandates of the FMLA.

42.  As a direct and proximate result of United's FMLA retaliation, Marinesi suffered adverse employment consequences, including wrongful termination, loss of wages and employment benefits, reputational damage, and severe emotional distress.

### COUNT 3: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

41. Marinesi incorporates the preceding paragraphs as if fully set forth herein.

42. During the course of the investigation, United Airlines misinterpreted and mischaracterized aspects of Marinesi's cultural background, familial roles, and social conduct, leading to false assumptions regarding his activity during medical leave.

43. These assumptions were rooted in cultural misunderstanding and implicit bias, including misinterpretation of Italian family customs and personal terminology.

44. The resulting decision to terminate Marinesi was tainted by this bias and constitutes discrimination on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

45. Marinesi was treated less favorably than similarly situated employees and subjected to heightened scrutiny because of his cultural and ethnic background.

### *COUNT 4: WORKPLACE HARASSMENT*

46. Marinesi incorporates the above paragraphs as though fully set forth herein.

47. Throughout the investigation process, Marinesi was subjected to unwarranted harassment by agents of United Airlines and its third-party administrator, including persistent and inappropriate contact with his medical providers despite prior objections.

48. The case manager repeatedly reached out to Marinesi's therapist and clinic staff in a manner that interfered with his medical care and breached professional boundaries.

49. Additionally, Marinesi received harassing messages stating "Heard u got fired from the airline ! I'm dancing and laughing while drinking a glass of red …"

50. This harassing text message is just one example of the behaviors contributing to a hostile and intimidating environment during an already vulnerable period of medical recovery.

51. United Airlines failed to take any corrective action to address this pattern of harassment and instead relied on the results of this flawed and invasive process to justify termination.

52. The conduct described herein created a hostile and offensive atmosphere for Marinesi, in violation of applicable workplace standards and policies against harassment.

### V.     PRAYER

**WHEREFORE**, Mr. Marinesi prays for judgment in his favor and against Defendants, as follows:

a) Back Pay, including wages and salary, overtime, and benefits;

b) Back Pay and Front Pay;

c) Punitive Damages;

d) Mental anguish and emotional distress;

e) Pre-judgement and Post Judgement Interests;

f) Reasonable attorney's fees'

g) Court costs; and

h) All other relief this court deems appropriate.

## VI. JURY DEMAND

Plaintiff requests a trial by jury.

Respectfully Submitted,

THE LAW OFFICE OF TAYO BLAND P.C.
By: */s/Tayo Bland*
Tayo Bland, Esq.
11 Broadway Suite 615
New York, NY 10004
tayo@tayoblandlaw.com
Telephone: (212) 913-9651
Facsimile: (646) 434-1016

-AND-

DANIEL, WILLIAMS, ASSOCIATES PLLC
By: */s/Kathryn Williams*
Kathryn Williams, Attorney-in-Charge *(pro hac vice pending)*
k.williams@danielwilliamslaw.com
Helen Daniel *(pro hac vice pending)*
h.daniel@danielwilliamslaw.com
2201 Hermann Drive
Houston, Texas 77004
Telephone: (713) 229-9997
Facsimile:  (281) 501-6777
**ATTORNEYS FOR PLAINTIFF**